**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| CORAM DEO ACADEMY, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| 525 CONGRESSIONAL BLVD., LLC, | ) | Case No.: ___1:26-cv-938___ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MENNONITE MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | **)** | |

**COMPLAINT FOR DECLARATORY JUDGMENT,
BREACH OF CONTRACT, AND BAD FAITH**

Plaintiffs Coram Deo Academy, Inc. ("Coram Deo") and 525 Congressional Blvd., LLC

("525 Congressional"), by counsel, for their Complaint against Defendant Mennonite Mutual

Insurance Company ("Mennonite Mutual" or "Defendant"), state as follows:

**INTRODUCTION**

1.      Coram Deo is a nonprofit that provides a classical Christian education to students

from pre-kindergarten through twelfth grade. Coram Deo, until the time of the events giving rise

to this lawsuit, operated out of building located at 525 Congressional Boulevard in Carmel, Indiana

(the "School").

2.      Coram Deo leased the School building from 525 Congressional. In satisfaction with

Coram Deo's obligations under the lease, Coram Deo insured the School building and related

property with Mennonite Mutual and identified 525 Congressional as an additional interest and

loss payee on the policy.

1

3.     On February 9, 2026, it was discovered the School building was damaged when a pipe that is part of the fire suppression system broke, causing extensive water damage below the building's slab (the "Leak"). The Leak caused extensive damage to the School that has made the School unoccupiable. As a direct result of the Leak, Coram Deo had to move its operations to another facility and 525 Congressional is left with an uninhabitable building.

4.     Despite express coverage for the cause of the Leak and resulting damage, Mennonite Mutual has taken the untenable and bad faith position that coverage under its policy is limited to the $10,000 flood coverage limit and that the remainder of Plaintiffs' damages are excluded by the exclusion for "Earth Movement," which is defined to include subsidence, erosion, and soil movement, forcing Plaintiffs to bring this lawsuit.

## PARTIES, JURISDICTION, AND VENUE

5.     Coram Deo is a nonprofit corporation organized under the laws of the State of Indiana, with its principal place of business at 525 Congressional Boulevard, Carmel, Indiana 46032, in Hamilton County, Indiana. Coram Deo is a citizen of the State of Indiana.

6.     525 Congressional is a limited liability company organized under the laws of the State of Indiana. 525 Congressional is the owner of the property located at 525 Congressional Boulevard, Carmel, Indiana 46032, which it leases to Coram Deo. 525 Congressional is a single member limited liability company. 525 Congressional's sole member is Bruce Wishard, a citizen of the state of California.

7.     Mennonite Mutual is an insurance company organized under the laws of the State of Ohio, with its principal place of business at 1000 South Main Street, Orrville, Ohio 44667. Mennonite Mutual is a citizen of the State of Ohio. Mennonite Mutual is authorized to transact

2

insurance business in the State of Indiana and issued the subject policy to Coram Deo at its principal place of business in Carmel, Indiana.

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

9.    Coram Deo and 525 Congressional are citizens of the States of Indiana and California. Mennonite Mutual is a citizen of the State of Ohio.

10.    The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs' damages caused by the Leak are in the millions of dollars.

11.    This Court has authority to enter a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District, including the Leak at the School, which is located within the Southern District of Indiana. Mennonite Mutual also issued the relevant insurance policy to Coram Deo at Coram Deo's principal place of business in Carmel, Indiana.

## FACTUAL BACKGROUND

### A. The Lease and Coram Deo's Insurable Interest

13.    Coram Deo leases the School from 525 Congressional pursuant to a written lease agreement dated July 15, 2022 (the "Lease").

14.    The School consists of a building containing 46,617 rentable square feet in which Coram Deo operates its school. The Lease term runs through July 31, 2030.

15.    Pursuant to Article 12 of the Lease, Coram Deo is obligated to maintain, at its expense, insurance coverage on the School, including an "All Risk Coverage" insurance policy

covering loss of or damage to the School in the amount of its full replacement value. The Policy names 525 Congressional as additional interest / loss payee.

**B. The Insurance Policy**

16.    Coram Deo purchased a package insurance policy including property insurance for the School and its business personal property from Mennonite Mutual a Ministry Assistance Program Policy bearing Policy No. 400153421 (the "Policy"), with a policy period of June 26, 2025 through June 26, 2026. A true and accurate copy of the Policy is attached as Exhibit A.

17.    525 Congressional is identified as an additional interest / loss payee under the Policy. *See* Ex. A at 7.

18.    Under the Policy, Mennonite Mutual provides coverage for "direct physical loss or damage to property covered under Coverage A – Buildings and Coverage B – Business Personal Property at the described premises … caused by or resulting from a covered peril." *Id.* at 45. The School building is insured with a coverage limit of $12,200,214 and the business personal property is insured with a coverage limit of $1,220,022. The Policy also includes coverage for Loss of Income/Extra Expense in the amount of the actual loss sustained.

19.    A peril is covered under the Policy unless it is "limited or caused by a peril that is excluded." *Id.* at 68.

20.    The policy also lists certain "specified perils" which are expressly covered. The Policy defines "specified perils" to include, among other things, "water damage" and, separately, "leakage from fire extinguishing equipment." *Id.* at 44, ¶ 17(g), (p).

21.    The Policy defines "water damage" to include "the sudden or accidental discharge or leakage of water or steam as the direct result of a breaking or cracking of a part of the system or appliance containing the water or steam." *Id.* at 44, ¶ 17(p). The Policy further states that

where the foregoing definition of "water damage" applies, "the exclusions for: a) surface water; and b) water below the surface of the ground; set forth in the Water exclusion under Perils Excluded do not apply." *Id*. at 44-45.

**C. The February 9, 2026 Loss**

22.     On February 9, 2026, a teacher at Coram Deo arrived at the school at approximately 6:30 a.m. and discovered water approximately three to four inches high throughout the building. Water was observed coming out of the building and leaking from the lower windows.

23.     The fire department arrived at approximately 7:35 a.m. and shut off the main water valve and fire suppression system inside the building; however, these efforts did not stop the water from flowing. The fire department then shut off the main supply valve at the street and another main water valve located closer to the exterior of the building, which stopped the flow.

24.     The Leak caused not only water damage, but also cracks in the walls, ceiling, and concrete flooring of the School.

25.     Coram Deo timely notified Mennonite Mutual of the loss. Mennonite Mutual acknowledged receipt of the claim and assigned it Claim Number MAP2600046.

**D. Nederveld's Investigation**

26.     Mennonite Mutual retained the engineering firm Nederveld to investigate the cause of the loss. On February 13, 2026, Nederveld conducted a site visit and found "no obvious signs of above-ground leakage during our observations of the interior and exterior of the building." A true and accurate copy of the Nederveld February 20, 2026, report is attached as Exhibit B. *See* Ex. B at 2.

27. Nederveld's initial report, dated February 20, 2026, concluded that, based upon the apparent damage in the concrete, uneven concrete flooring, soil and silt in the interior, and photographs provided, the primary leak appeared to be occurring under the concrete of the building, potentially located between the main shutoff near the exterior of the building and the shutoffs leading to the riser room. Ex. B at 2-3.

28. On February 24, 2026, Nederveld, along with American Leak Detection, performed additional testing. Based on that testing, Nederveld concluded in its Supplemental Report No. 1, dated March 5, 2026, that "the leak is in the supply line to the fire suppression system and is located under the slab apparently 8' from where the line enters the riser room." A true and accurate copy of the Nederveld March 5, 2026, supplemental report is attached as Exhibit C. *See* Ex. C at 1.

29. Nederveld found no evidence of earthquake, landslide, subsidence, soil liquefaction, or other geologic activity that caused or contributed to the loss. *See generally* Exs. B and C.

30. Nederveld found no evidence of any acts, errors, or omissions in construction, blasting, or other manmade activities as set forth in the Policy's definition of "earth movement." *See generally* Exs. B and C.

31. Nederveld concluded that the cause of Coram Deo's loss was mechanical: a ruptured fire suppression supply line, which is a system or appliance containing water within the meaning of the Policy and the Policy's definition of "water damage" as a specified peril.

32. While the Policy otherwise contains an exclusion for "loss or damage caused by settling, cracking, shrinking, bulging or expanding of pavements, footings, foundations, walls,

6

ceilings, or roofs," the Policy states that "'[w]e' do pay for … loss caused by a 'specified peril'."

Ex. A at 74.

33.    Similarly, as noted above, where the "specified peril" definition of "water damage" as including "the sudden or accidental discharge or leakage of water or steam as the direct result of a breaking or cracking of a part of the system or appliance containing the water or steam" applies, "the exclusions for: a) surface water; and b) water below the surface of the ground; set forth in the Water exclusion under Perils Excluded do not apply." *Id*. at 44-45.

**E. Mennonite Mutual's Coverage Denial**

34.    Despite the fact that the Leak and resulting damage to the School was caused by a peril expressly covered by its Policy, Mennonite Mutual has attempted to manufacture an exclusion to coverage by citing facially inapplicable Policy provisions.

35.    On March 12, 2026, Mennonite Mutual, through its coverage counsel, sent a letter to Coram Deo taking the position that: (a) land, excavations, pipes, and foundations are not covered property; (b) the earth movement exclusion precludes coverage for loss or damage resulting from earth movement caused by erosion or subsurface water; (c) the water exclusion precludes coverage for loss or damage caused by water below the surface of the ground; and (d) damages caused by flood may be covered only up to the $10,000 aggregate limit.

36.    Mennonite Mutual's position is directly contrary to the plain language in the Policy, which provides express coverage for water damage, eliminates the water damage exclusion for water damage beneath the ground where pipes have burst, and provides express coverage for resulting loss to walls, floors, and foundations as originally caused by water damage or leakage from fire suppression systems.

7

37.     On April 2, 2026, Coram Deo responded with a detailed letter demonstrating that Mennonite Mutual's coverage position is incorrect and demanding that Mennonite Mutual reverse its denial and provide full coverage under the Policy for the loss.

38.     Mennonite Mutual has maintained its bad faith denial of coverage, reaffirming its position that the earth movement and water exclusions bar coverage and that the specified peril provisions do not override those exclusions.

39.     As of the date of this Complaint, Mennonite Mutual has refused to provide coverage to Coram Deo beyond the $10,000 flood sublimit.

40.     Mennonite Mutual's coverage positions conflict with the language of its Policy and are in bad faith, contrary to Indiana law. There is no evidence or good faith basis for Mennonite Mutual's position that the Leak and resulting damages to the School were caused by earth movement.

41.     Moreover, even if the "earth movement" exclusion could be interpreted to apply in the manner suggested by Mennonite Mutual (and it cannot), that interpretation would make the express coverage provided for specified perils illusory and meaningless.

42.     And, even if two reasonable Policy interpretations were possible (and they are not), Mennonite Mutual has an obligation under Indiana law to apply the Policy language in good faith and consistent with Plaintiffs' reasonable interpretation of the Policy, which Mennonite Mutual has refused and failed to do.

43.     Mennonite Mutual contends that foundations are not covered property, but it has ignored that the Policy expressly covers "loss or damage caused by settling, cracking, shrinking, bulging or expanding of pavements, footings, foundations, walls, ceilings, or roofs" when caused by a specified peril, as Plaintiffs' loss is here. Ex. A at 74.

8

44.     Even Mennonite Mutual's offer to pay the Policy's $10,000 flood coverage limit shows the disingenuousness and bad faith of its position. The Policy's definition of "Flood" is as follows:

> "Flood" means a general and temporary condition of partial or complete inundation of normally dry land areas due to:
>
> 1. The overflow of inland or tidal waters;
>
> 2. The unusual or rapid accumulation or runoff of surface waters from any source; or
>
> 3. Mudslides or mudflows which are caused by flooding as defined in item 2. above. A mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

45.     The Leak and Plaintiffs' loss in no way fit the Policy's definition of "Flood." Mennonite Mutual's attempted reliance on the Policy's flood coverage is merely an attempt to limit Mennonite Mutual's liability to the $10,000 limits of that coverage.

## COUNT I: DECLARATORY JUDGMENT

46.     Plaintiffs incorporate by reference the allegations of all preceding paragraphs as though fully set forth here.

47.     An actual and justiciable controversy exists between Plaintiffs and Mennonite Mutual regarding Mennonite Mutual's obligations to provide coverage under the Policy for the February 9, 2026, loss.

48.     Plaintiffs are entitled to a judicial declaration that:

   a.  The loss was caused by a "specified peril" under the Policy: specifically, "water damage" as defined in the Policy (the sudden or accidental discharge or leakage of water as the direct result of a breaking or cracking of a part of the system or

appliance containing the water) and/or "leakage from fire extinguishing equipment."

b. The Policy's express carve-out for water damage caused by the breaking or cracking of a system or appliance containing water overrides the water exclusion's provisions regarding surface water and water below the surface of the ground, and therefore the water exclusion does not apply to this loss.

c. The Policy's Flood Endorsement adds "flood" as an additional specified peril, but it does not supplant or limit the existing coverage for water damage or leakage from fire extinguishing equipment as separate specified perils. Accordingly, the $10,000 flood sublimit does not apply to Coram Deo's loss.

d. The earth movement exclusion does not apply to Coram Deo's loss because: (i) the cause of the loss was mechanical—a ruptured fire suppression supply line— not geologic or earth-related activity; (ii) there is no evidence of earthquake, landslide, subsidence, soil liquefaction, or other earth movement as defined in the Policy; and (iii) to the extent the earth movement exclusion could be read to encompass the consequences of a ruptured supply line, such a reading would render the Policy's express coverage for water damage due to bursting pipes entirely illusory, in violation of Indiana public policy.

e. Plaintiffs are entitled to coverage under the Policy for the full extent of their covered losses arising from the February 9, 2026, loss, including all resulting damage consisting of settling, cracking, shrinking, bulging, or expanding of pavements, footings, foundations, walls, ceilings, or roofs.

49.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiffs are entitled to a declaration of their rights under the Policy and of Mennonite Mutual's obligation to provide full coverage for the loss.

## COUNT II: BREACH OF CONTRACT

50.     Plaintiffs incorporate by reference the allegations of all preceding paragraphs as though fully set forth here.

51.     The Policy constitutes a valid and binding contract between Coram Deo and Mennonite Mutual, under which 525 Congressional is a named loss payee and intended third-party beneficiary.

52.     Coram Deo has performed all conditions precedent under the Policy, including paying all required premiums and timely notifying Mennonite Mutual of the loss.

53.     Water damage caused by the rupture of a fire suppression supply line is a covered peril under the Policy. Plaintiffs' loss falls squarely within the Policy's definition of "water damage" (the sudden or accidental discharge or leakage of water as the direct result of a breaking or cracking of a part of the system or appliance containing the water) and "leakage from fire extinguishing equipment," both of which are enumerated "specified perils."

54.     Neither the water exclusion nor the earth movement exclusion bars coverage for this loss for the reasons set forth above.

55.     By refusing to provide coverage beyond the $10,000 flood sublimit, which does not apply, Mennonite Mutual has breached the Policy.

56.     As a direct and proximate result of Mennonite Mutual's breach, Plaintiffs have suffered damages in an amount to be proven at trial, including consequential damages flowing from Mennonite Mutual's wrongful denial of coverage.

## COUNT III: BAD FAITH

57.     Plaintiffs incorporate by reference the allegations of all preceding paragraphs as though fully set forth here.

58.     Mennonite Mutual owed Coram Deo a duty to deal with Coram Deo's claim fairly, honestly, and in good faith.

59.     Mennonite Mutual breached its duty of good faith and fair dealing by, among other things:

   a. Denying coverage based on the water exclusion while ignoring the Policy's own express carve-out providing that, when water damage results from the breaking or cracking of a system or appliance containing water, the exclusions for surface water and water below the surface of the ground do not apply.

   b. Invoking the earth movement exclusion despite the absence of any evidence of earthquake, landslide, subsidence, soil liquefaction, or other geologic activity, and despite the fact that the cause of loss was water damage and leakage from the Property's fire suppression system—expressly covered perils under the Policy.

   c. Taking the untenable position that "movement caused by water under the surface of the ground" in the earth movement definition overrides the express grant of coverage for loss or damage caused by a specified peril and rendering the Policy's express coverage for water damage illusory.

60.      In addition, Mennonite Mutual has violated the Indiana Unfair Claims Settlement Practices Act, Indiana Code § 27-4-1-4.5, by engaging in the following conduct, which further evidences its breach of its duty of good faith and fair dealing:

   a.   Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

   b.   Not attempting in good faith to effectuate prompt, fair and equitable settlement of a claim in which Mennonite Mutual's liability is reasonably clear;

   c.   Compelling Plaintiffs to institute litigation to recover amounts due under the Policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds like Coram Deo; and

   d.   Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

61.      As a direct and proximate result of Mennonite Mutual's bad faith, Plaintiffs have suffered damages, including but not limited to the full amount of their covered losses, consequential damages arising from Mennonite Mutual's wrongful denial, pre- and post-judgment interest, and attorney's fees and costs incurred in prosecuting this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Coram Deo Academy, Inc. and 525 Congressional Blvd., LLC respectfully request that this Court enter judgment in their favor and against Defendant Mennonite Mutual Insurance Company as follows:

   A.   On Count I, a declaratory judgment that: (i) Coram Deo's February 9, 2026, loss is covered under the Policy; (ii) the water exclusion and earth movement exclusion do not

bar coverage; (iii) the $10,000 flood sublimit does not limit coverage for this loss; (iv) the Policy's anti-concurrent cause language does not bar coverage because the efficient proximate cause of the loss is an expressly covered peril; and (iv) Mennonite Mutual is obligated to provide coverage for the full extent of Coram Deo's covered losses under the Policy;

B.  On Count II, compensatory damages for breach of contract in an amount to be proven at trial, including but not limited to all costs and expenses Plaintiffs have incurred or will incur as a result of the loss, together with consequential damages resulting from Mennonite Mutual's wrongful denial of coverage;

C.  On Count III, compensatory damages for bad faith in an amount to be proven at trial, including consequential damages, pre- and post-judgment interest, and attorney's fees;

D.  Pre-judgment and post-judgment interest at the applicable statutory rate;

E.  Costs of this action, including reasonable attorney's fees; and

F.  All other relief that this Court deems just and proper.

**JURY DEMAND**

Plaintiffs Coram Deo Academy, Inc. and 525 Congressional Blvd., LLC demand trial by jury on all issues so triable.

DATED: May 8, 2026                    Respectfully submitted,


BARNES & THORNBURG LLP

*/s/ Charles P. Edwards*
Charles P. Edwards (Atty. No. 17309-06)
Kelsey Dilday Miller (Atty. No. 35205-49)
Alison K. McCarthy (Atty. No. 39771-49)
11 S. Meridian Street
Indianapolis, IN 46204-3535
Telephone: (317) 231-7438

14

Email: cedwards@btlaw.com
Kelsey.dildaymiller@btlaw.com
Alison.mccarthy@btlaw.com

*Attorneys for Plaintiff Coram Deo Academy, Inc.*

PARR RICHEY FRANDSEN PATTERSON
KRUSE LLP

*/s/ Michael L. Schultz*
Michael L. Schultz (Atty. No. 20361-49)
251 N. Illinois Street, Suite 1800
Indianapolis, Indiana 46204
Phone: 317-269-2500
Email: mschultz@parrlaw.com

*Attorney for Plaintiff 525 Congressional Blvd., LLC*